PAUL S. PADDA, ESQ. *(NV Bar #10417)*
Email: *psp@paulpaddalaw.com*
JOSHUA Y. ANG, ESQ. *(NV Bar #14026)*
Email: *ja@paulpaddalaw.com*
**PAUL PADDA LAW, PLLC**
4560 South Decatur Blvd., Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **CHRISTINE A. CARNEY**, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> **LIFEPOINT HEALTH, INC.** (doing business as "Northeastern Nevada Regional Hospital"), a foreign corporation; **DOES 1-10**; and **ROES A-Z**; <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT** <br> *JURY TRIAL DEMANDED* |

This is a civil action seeking monetary damages for professional negligence pertaining to medical care provided to Plaintiff Christine A. Carney ("Plaintiff"). In support of this Complaint, Plaintiff relies upon the Affidavit of Dr. John D. Hofbauer, M.D. (incorporated by reference herein and attached to this Complaint as **Exhibit A**) and alleges as follows:

…

…

1

**I.**

**JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION**

1. This civil action is brought by Plaintiff pursuant to the statutory and common law of the State of Nevada.

2. Federal jurisdiction is conferred by virtue of the *28 U.S.C. §1332 et seq*. Plaintiff is a California resident, while Defendant LifePoint Health, Inc. ("Defendant") is a Delaware corporation. Therefore, the requisite complete diversity of citizenship exists herein. The amount in controversy also exceeds the sum of $75,000.00, exclusive of interest and costs.

3. Venue is appropriate in this Court per *28 U.S. Code § 1391 et seq.* because all events giving rise to the present cause of action occurred in Elko County, Nevada.

4. That the exercise of *in personam* jurisdiction by this Court over the Defendant is proper because Defendant is a corporation owning and operating Northeastern Nevada Regional Hospital ("NNRH"), the facility where the events at issue occurred, which is located within the state of Nevada, establishing the requisite minimum contacts. *See generally*, International Shoe v Washington, 326 US 310 (1945).

**II.**

**THE PARTIES**

5. Plaintiff Christine A. Carney ("Plaintiff") is an adult female.

6. Defendant LifePoint Health, Inc. (doing business as "Northeastern Nevada Regional Hospital") ("Defendant") is a for-profit healthcare company, upon information and

2

belief, headquartered in Tennessee, that owns and operates NNRH which is located in Elko County, Nevada. Defendant is a Delaware corporation.

7. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated as Does 1 through 10 and Roes A through Z, inclusive, are responsible in some manner for the events and happenings herein referred to and negligently and/or intentionally caused injuries and damages to Plaintiff, whether through playing an active role in some critical aspect of the subject medical treatment provided to Plaintiff, no matter how minute (and thereby directly perpetrating, encouraging or triggering the subject malpractice), or through enabling the subject malpractice in a more passive fashion through omissions, negligence or indifference (such as through negligent policy-making; manufacturing; the provision of defective implements, tools or medications; and negligent hiring, retention or oversight). Plaintiff further alleges that she cannot currently ascertain the identity of each of the Doe/Roe Defendants and Plaintiff will therefore seek leave of Court to amend this Complaint to insert the true names and capacities of Doe/Roe Defendants when they have been ascertained, together with appropriate charging allegations and to join such Defendants in this action.

8. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated as Does 1 through 10 and Roes A through Z, inclusive, be responsible/liable in some manner to the Plaintiff for the events and happenings herein referred, for reasons in addition to or in lieu of those articulated in paragraph 7 above. Specifically, Plaintiff is further informed and believes that each of the Does/Roes may be either a corporation, related subsidiary, parent entity, group, partnership, holding company, owner, predecessor entity,

3

successor entity, joint venture, related association, insurer or business entity, the true names of which are currently unknown to Plaintiff at this time, liable to Plaintiff in some manner for the events at issue because of its corporate/agency/employment relationship with the named Defendant, or with any other Defendant not currently known, described as a Doe/Roe in paragraph 7 above, fully incorporated herein by reference. Additionally, Plaintiff alleges that she cannot currently ascertain the identity of each of the Doe/Roe Defendants described herein and Plaintiff will therefore seek leave of Court to amend this Complaint to insert the true names and capacities of these Doe/Roe Defendants when they have been ascertained, together with appropriate charging allegations and to join such Defendants in this action.

### III.

### FACTUAL BACKGROUND

9. NNRH (owned and operated by Defendant) advertises itself on its website as a hospital that offers various healthcare services, including heart care, dietary services, imaging services, pediatrics and oncology, among other things. Defendant is the owner and operator of NNRH.

10. On February 11, 2018, at 12:01 P.M., Plaintiff arrived and was seen at the NNRH-Emergency Room ("ER") and received a diagnosis of a right eye corneal abrasion and acute bacterial conjunctivitis. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8A). She had been experiencing pain in her right eye since the night before. *Id.* The Emergency Room Physician (ERP) used Tetracaine Ophthalmic Solution 0.5% drops ("Tetracaine") to anesthetize the right eye in order to perform examination. *Id.* Plaintiff's vision remained blurry after the application

4

of the Tetracaine, but it did appear to lessen her pain at the time. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8B).

11.  Among other things, a non-contrast CT scan of the orbits was also performed, showing no remarkable findings other than moderate mucosal thickening of the paranasal sinuses and opacification of the maxillary antra. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8C).

12.  Plaintiff was discharged from NNRH at approximately 5:00 P.M. the same day. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8E). According to statements and reports, Plaintiff's daughter was given a bottle of Tetracaine Ophthalmic (0.5%) eyedrops by the ER-nurse and told that Plaintiff should use the drops every 2 hours until Plaintiff was able to see her eye specialist, which should occur as soon as possible. The nurse explained the drops would help Plaintiff with her pain. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8D). Post-discharge, from approximately 5:45 P.M. of February 11, 2018, until 12:26 P.M. of February 13, 2018, when she was able to finally see her eye specialist Dr. Kenneth W Houchin, M.D., Plaintiff applied the Tetracaine eyedrops approximately 26 times, endeavoring to do so every 2 hours as instructed, but occasionally using the eyedrops at 90 minute intervals when the pain became intolerable. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8E).

13.  On February 13, 2018, during the aforementioned consultation, Plaintiff's ophthalmologist, Dr. Kenneth W Houchin, M.D., diagnosed the Plaintiff with marked diffuse corneal edema explained by medicamentosa. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8F). Ophthalmic Medicamentosa occurs when a drug applied to the eye as drops or

5

ointment, or as a cosmetics, or any other substance contacting the eye, causes an irritative or allergic reaction. *Id.* Dr. Houchin explained that the Tetracaine eye drops Plaintiff had been using should not have been given to her and are rarely if ever prescribed to a patient. *Id.* He also stated that her cornea appeared to be melted. *Id.*

14. Plaintiff had many subsequent follow-up visits with Dr. Houchin and was eventually referred to the Moran Eye Center in Salt Lake City, Utah where she was told that a corneal transplant would be the best course of treatment, though further discussions are still underway. *Id.* At this time, Plaintiff has lost vision in her right eye and continues to have episodes of pain, discomfort and tearing. *Id.*

15. The Plaintiff's loss of vision, and other ocular medical issues, were directly related to and caused by the prolonged use of the medication Tetracaine Ophthalmic Solution (0.5%). *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 9). This medication is principally used for and during surgical procedures and always under the supervision and guidance of a physician. *Id.* Under no conditions should a medication (such as Tetracaine) be given or prescribed to a patient by any healthcare facility nurse or other provider other than a licensed physician. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8F). Tetracaine Ophthalmic Solution (0.5%) is not prescribed to patients to be administered at home because of potentially dangerous side effects and adverse reactions, as experienced by Plaintiff from her use of it. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 9). Although some publications note that Tetracaine Ophthalmic Solution (0.5%) drops may be used effectively for pain for up to 24 hours, close supervision and monitoring is still the standard of care when administering this medication. *Id.*

PAUL PADDA LAW, PLLC
4560 South Decatur Blvd., Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

Due to the professional negligence of Defendant, through its employees, Plaintiff was induced to misuse Tetracaine, which resulted in the subject injuries.

### IV.

### FIRST CAUSE OF ACTION
*[By Plaintiff Against All Defendants]*
**Negligence / Medical Malpractice**

16. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 15 above.

17. Under Nevada law, specifically the provisions of Nevada Revised Statute ("NRS") sections 41A, a plaintiff may recover for medical malpractice by showing the following: (i) defendant(s) (i.e. hospital, physician or employee of hospital) failed in rendering services to use reasonable care, skill or knowledge ordinarily used in similar circumstances; (ii) defendant's conduct was the actual and proximate cause of plaintiff's injuries; and (iii) plaintiff suffered damages. Under NRS 41A.071, a suit alleging medical malpractice requires an affidavit from a "medical expert." Said affidavit is attached as "**Exhibit A**."

18. In this case, Defendant (A medical services corporation in the business of operating/providing such services at NNRH) owed Plaintiff a duty of care to provide her with medical services in a reasonable and safe manner. Defendant breached its duty of care towards Plaintiff by providing her with medical services that fell below the acceptable standards of practice and care. *See* **Exhibit A** (attached in compliance with NRS 41A.071 and fully incorporated by reference herein). Specifically, Defendant acted below the standard of care when, among other things detailed in **Exhibit A**, its employees and or agents under it control at NNRH

7

PAUL PADDA LAW, PLLC
4560 South Decatur Blvd., Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

negligently prescribed/provided Tetracaine Ophthalmic Solution (0.5%) eye drops to Plaintiff for home use which should never be done because of potentially dangerous side effects and adverse reactions, which Plaintiff in fact experienced and resulted in blindness in her right eye, among other continuing problems. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8D, E, F & G). Tetracaine Ophthalmic Solution (0.5%) is a medication primarily used during surgery and is always administered under the supervision and guidance of a physician, Instead, it was prescribed/provided to Plaintiff by a nurse (an employee of Defendant, upon information or belief), which is improper. *Id.* In addition, the deficient instructions provided to Plaintiff upon discharge by Defendant regarding the use of Tetracaine Ophthalmic Solution (0.5%) resulted in misuse/overuse. *Id.* Any other failures by Defendants to adhere to the standard of care while treating Plaintiff not described herein are realleged and incorporated by reference herein, as set forth in **Exhibit A** and paragraphs 1 to 17 above.

19.     Based upon the foregoing, it was entirely foreseeable that the negligent prescription/provision of Tetracaine Ophthalmic Solution (0.5%) to Plaintiff by Defendant resulted in overuse/misuse that could have caused (and in all probability did cause) severe ocular health problems, including but not limited to corneal "melting," blindness in Plaintiff's right eye and episodes of pain, discomfort and tearing. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8D, E, F & G). Thus, Defendant's breach of its duty was both the actual and proximate cause of Plaintiff's injuries.

…

8

20. As a direct and proximate result of Defendant's professional negligence, Plaintiff sustained injuries to her bodily organs and systems, all or some of which may be permanent and disabling, and all to Plaintiff's general and special damages in a sum in excess of Fifteen Thousand Dollars ($15,000.00).

21. As a direct and proximate result of the negligence, carelessness and/or recklessness of Defendant, Plaintiff has incurred, and continues to incur, medical expenses, loss of income, and loss of earning capacity etc., and all to Plaintiff's general and special damages in an amount in excess of Fifteen Thousand Dollars ($15,000.00). Specifically, among other things Plaintiff will require a corneal transplant to restore her eyesight in her right eyes that will in all likelihood cost more than $75,000.00 in of itself.

22. As a result of Defendant's negligence and carelessness, it has been necessary for Plaintiff to retain the law firm of Paul Padda Law, PLLC to prosecute this action, and Plaintiff is therefore entitled to recover reasonable attorney's fees and costs.

## VI.

### SECOND CAUSE OF ACTION
*[By Plaintiff Against All Defendants]*
**Negligent Hiring, Retention, and Supervision**

23. Plaintiff realleges and incorporates by reference the allegations set forth in all paragraphs above.

24. During the time period relevant to this lawsuit, Defendant had a duty to protect Plaintiff from harm resulting from any harm caused by any agent, servant, employee and/or joint venturer of the Defendant.

9

PAUL PADDA LAW, PLLC
4560 South Decatur Blvd., Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

25. Upon information and belief, Defendant breached that duty by failing to properly hire, retain, train, supervise, and/or discipline tortfeasor(s) that was acting as an agent, servant, employee and/or joint venturer of the Defendants. Specifically, the aforementioned failings resulted in action and/or omissions on the part of Defendant that fell below the standard of care when, among other things detailed in **Exhibit A**, the aforementioned parties under its control at NNRH negligently prescribed/provided Tetracaine Ophthalmic Solution (0.5%) eye drops to Plaintiff for home use which should never be done because of potentially dangerous side effects and adverse reactions, which Plaintiff in fact experienced and resulted in blindness in her right eye, among other continuing problems. *See* **Exhibit A**, (Affidavit of Dr. John D. Hofbauer, M.D. ¶ 8D, E, F & G). Tetracaine Ophthalmic Solution (0.5%) is a medication primarily used during surgery and is always administered under the supervision and guidance of a physician, Instead, it was prescribed/provided to Plaintiff by a nurse (an employee of Defendant, upon information or belief), which is improper. *Id.* In addition, the deficient instructions provided to Plaintiff upon discharge by Defendant regarding the use of Tetracaine Ophthalmic Solution (0.5%) resulted in misuse/overuse. *Id.* Any other failures by Defendants to adhere to the standard of care while treating Plaintiff not described herein are realleged and incorporated by reference herein, as set forth in **Exhibit A** and paragraphs 1 to 19 above.

26. As a direct and proximate result of Defendant's failure(s), Plaintiff has incurred, and continues to incur, medical expenses, loss of income, and loss of earning capacity etc., and all to Plaintiff's general and special damages in an amount in excess of Fifteen Thousand Dollars

($15,000.00). Specifically, among other things Plaintiff will require a corneal transplant to restore her eyesight in her right eyes that will in all likelihood cost more than $75,000.00 in of itself.

27. That as a direct and proximate result of the actions of Defendant (including those of its agents/employees) and each of them, Plaintiff has been injured in an amount well in excess of $15,000.00.

## VII.

## DEMAND FOR JURY TRIAL

28. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff invokes her right to trial by jury in this civil action.

## VIII.

## RELIEF REQUESTED

29. Wherefore, in light of the foregoing, Plaintiff requests that the Court enter the following relief in this matter:

   a. Set this matter for <u>trial by jury</u> on a date certain;

   b. Award Plaintiff compensatory and special damages in an amount exceeding $75,000.00 in total;

   c. Award Plaintiff interest (pre-judgment and post-judgment) on all sums permitted by law;

   d. Award Plaintiff reasonable attorney's fees and costs for having to prosecute this matter;

…

…

…

e. Award all other just and proper relief.

DATED this 8th day of February 2019.

Respectfully submitted by:

PAUL PADDA LAW, PLLC

By: /s/ Paul S. Padda
PAUL S. PADDA, ESQ.
JOSHUA Y. ANG, ESQ.
4560 South Decatur Blvd., Suite 300
Las Vegas, Nevada 89103

*Attorneys for Plaintiff*